WESTERN DIS.
September,1841.
RIGGS
vs.
DUPERRIER
ET AL.

---

### RIGGS vs. DUPERRIER ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF

ST. MARTIN, THE JUDGE OF THE SEVENTH PRESIDING.

Where the evidence establishes the existence of a redhibitory disease at the time of sale, although not perceptible to ordinary observers, or known to the vendors; yet it is sufficient to authorize a rescission of the sale and return of the price.

Where the quantum of damages is not proved or is left doubtful, the case will be remanded to ascertain them.

This is a redhibitory action, to recover back the notes or price of a negress, which the defendants caused to be sold at public auction, and was purchased by the plaintiff, at the price of $600. He expressly avers, that at the time of said sale, the negress was afflicted with an incurable disease, called a cancer in the womb, of which complaint she shortly after died. He prays, that the sale be rescinded, and that his notes be given up and cancelled, and that he have judgment for damages, &c.

The defendants, Duperrier and Segura, the vendors of said negress, denied the existence of the redhibitory disease at the time of sale, or that they were bound to return the price, &c. They further aver, they proposed about three weeks after the sale, to take back this woman, when the plaintiff complained of

her being diseased ; and that, if when she was properly treated, the disease proved bad, that then they would cancel the sale ; but the plaintiff refused. They pray, that the demand of plain- tiff be rejected ; that they have judgment for the instalment of the price now due, in reconvention.

The redhibitory disease was proved to the satisfaction of the judge, who gave judgment rescinding the sale, and for the return of plaintiff's notes or the price. The defendants appealed.

*Splane*, for the plaintiff.

*Voorhies*, contra.

*Garland, J.* delivered the opinion of the court.

This is an action to rescind the sale of a female slave sold by the defendants to the plaintiff, on the ground of her being afflicted with an incurable disease; also to compel the surrender of three notes amounting to $600, which were given to secure the price, and for damages sustained by the employment of physicians to attend the woman, and trouble and expenses incurred during her illness. The answer puts all the allegations. at issue.

It is shown, that the sale was made on the 24th of February, 1838. About two weeks after, the plaintiff ascertained, the woman was very ill and almost useless, and told a witness, if he chose, he might take her for her services ; he did so ; but in a few days after he returned her to plaintiff, as he would not keep her. The plaintiff, about this time, called on one of the defendants, to take the slave back again, who replied, he could not until he consulted his partner, Duperrier. On the 14th of March, 1838, the plaintiff placed the woman under the care of a physician, where she remained until the 25th of May, without any improvement in her health. During this time, another physician was called in, who visited the woman a few times ; a critical examination was made by both physi-

Western Dis.
September,1841.

RIGGS
vs.
DUFERRIER
ET AL.

cians, who concur in saying, she had a cancer in the womb, which, in their opinion, had existed for a year or more, and was incurable. The woman died in a short time after she was taken from under the care of the physicians. In behalf of the defendants several witnesses swear, they had known the woman for a long time, and did not know of her having any particular disease. She worked on the plantation of defendants as the other slaves, and in the swamp the year previous to the sale. One witness, who had acted as overseer on defendants' plantation, says, he did not know she was diseased, and other neighbors testified to the same thing.

Upon this evidence we cannot doubt, that the woman was diseased at the time of the sale. Two physicians examined her in a month or six weeks after, and say positively, she had a cancer in the womb, of long standing, which at the time was much advanced and incurable, and she died in three or four months after she was sold. The testimony on the part of defendants is negative only, and scarcely that. They say, they did not know of any disease the woman had, though they saw her frequently, and one of them had had her in his possession some two or three months before the sale, and observed no disease. This may all be very true, and probably is so, but it is not shown, the witnesses gave any particular attention to the state of the woman's health, and from the character of the disease it is not probable, she would disclose it to white men, as long as she could help it, unless it was to her owners. The physicians say, the symptoms are not very perceptible in the incipient stages of the disease, except to an experienced observer. The judgment cancelling the sale and decreeing a surrender of the notes, is perfectly correct.

As to the damages, the plaintiff has failed to prove what they amount to. It is not shown, the defendants acted in bad faith in selling the slave, or that they knew of her being afflicted with an incurable disease. The physicians say, they

charge plaintiff $315 for their services, which they expect him
to pay them, but he has not yet paid that amount or any other;
on the contrary, it was admitted in the argument, that one or
both of the doctors had sued the plaintiff for their accounts,
and he was contesting with them the justice or reasonableness
of their demands. It is not proved their services were worth
the sum charged, further than the statement of Doctor Nabonne
as to his claim for $55. It may be, that the plaintiff may not
be condemned to pay the sums charged, and if not, he is not
entitled to recover them from the defendants. In this state of
the case, the judgment as to damages must be reversed, and
the cause remanded to ascertain them.

The judgment of the District Court is therefore affirmed
so far as it relates to the annullment of the sale from defend-
ants to plaintiff; but so far as it relates to the damages, it is
annulled and reversed, and the cause remanded for the purpose
of ascertaining and fixing the amount; the costs in the District
Court, up to the date of the appeal, to be paid by the defend-
ants, those of this court to be paid by the plaintiff, and those
incurred after the transmission of this judgment to the District
Court, to abide the final decision of the case.